# In the United States District Court
# for the
# Western District of Texas

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| v. | § | |
| | § | |
| ANDRES SANCHEZ | § | SA-13-CR-276-XR |
| | § | |

## ORDER

On this day came on to be considered Defendant's motion to suppress.

## Background

During the Fall of 2012, the San Antonio Police Department began investigating alleged narcotic trafficking at A-1 Custom[1], a paint and body shop, on Frio City Road in San Antonio, Texas. Two cooperating informants[2] told San Antonio Police Detective Mark Clancy: Andres Sanchez and Gilbert Guzman were providing and distributing large quantities of methamphetamines; Mr. Sanchez was a high ranking member of the Hermanos Pistoleros Latinos ( HPL ) street gang; and Mr. Sanchez drove a maroon Cadillac Escalade. The informants also stated that Mr. Sanchez's vehicle was painted on the hood with a large image of a skull with two pistols. The informants identified Mr. Guzman after being shown photographs. Finally, the informants told Det. Clancy[3] that Mr. Sanchez kept drugs and a firearm in the vehicle.

---

[1] This business is sometimes referred to as A-1 Kustom Collision Repair.
[2] Defense counsel argues that the existence of cooperating informants had not been previously disclosed prior to the July 22, 2013 hearing. Alternatively, the defendant argues that the reliability of the confidential informants had not been established and their information corroborated. The Court overrules these objections inasmuch as the testimony of Det. Clancy established the reliability of the confidential sources and that their information had been corroborated.
[3] In an apparent attempt to discredit Det. Clancy, defense counsel notes that in the criminal complaint filed against Gilbert Guzman and during a February 2013 detention hearing regarding Guzman, Det. Clancy incorrectly testified that a substantial amount of methamphetamine was found in Sanchez's vehicle. In fact, the substance found in the Sanchez's vehicle was cocaine.

On December 22, 2012, surveillance was conducted at the A-1 paint and body shop. Mr. Sanchez was seen entering into his vehicle, leaving the shop and travelling about 12 blocks to La Michoacana Meat Market on South Zarzamora Street. Upon seeing Sanchez leave the meat market, San Antonio Police Department Sergeant Val Garcia contacted uniformed officers in a marked police vehicle and instructed them to develop their own probable cause to conduct a traffic stop.

SAPD Officer Ernest Shaun Hernandez conducted the traffic stop after seeing the Defendant's vehicle exit the meat market without stopping, failing to signal and displaying illegal lights. Upon approaching the Escalade, Officer Hernandez testified he smelled marihuana. He asked the driver for his license and insurance information and the driver immediately responded that there was a murder warrant for someone who had a name and birthdate similar to his. At that point Officer Hernandez asked the driver to step out of the vehicle. Hand restraints were placed on the driver for safety reasons. When the driver exited the vehicle, Officer Hernandez noticed a bag of cocaine on the floor of the vehicle. Officer Hernandez asked Mr. Sanchez if anything else was in the car besides the cocaine, Mr. Sanchez stated "no sir, you check" or "no sir, you can search it."[4] Mr. Sanchez was asked whether he wanted to talk to the detectives conducting the investigation or if he wanted to go to jail for the cocaine possession. Mr. Sanchez quickly opted to talk to the detectives. For the defendant's own safety he was removed from the scene, placed into a patrol car and taken to the gang unit office. Another police officer drove the vehicle to the gang unit office.

After Mr. Sanchez was transported to the gang unit office, Sgt. Garcia read Mr. Sanchez his *Miranda* warnings. Mr. Sanchez acknowledged understanding his rights and stated he

---

[4] Officer Hernandez later completed a report of the incident. In his report Officer Hernandez made no mention of verbal consent being given to search the vehicle. Officer Hernandez testified that when individuals "agree to work" or cooperate with police officers he does not write as detailed of a report.

2

wanted to cooperate. Mr. Sanchez was advised that he needed to be truthful. Mr. Sanchez admitted to possessing the cocaine and marihuana found in his vehicle.

While Mr. Sanchez was meeting with Sgt. Garcia, the Escalade was parked at the gang unit office. Prior to the vehicle being searched a canine unit "ran" a dog on the vehicle.[5] The dog "hit several times." Thereafter, the vehicle was searched. A weapon was located in the engine compartment. The Government argues that it had the right to search the vehicle based upon the verbal consent earlier given to Officer Hernandez. Alternatively, the Government argues that it had probable cause to search the vehicle based upon the smell of marijuana and the canine alert.

Police officers informed Sgt. Garcia that a firearm[6] had been located in the hood compartment of the vehicle. Mr. Sanchez was confronted with this fact and stated that he thought they [police officers] had already found it. Mr. Sanchez acknowledged buying the weapon for protection from rival gang members. He was later released after stating that he was willing to work with law enforcement officers in their drug trafficking investigation.

On April 3, 2013, an indictment charging Mr. Sanchez with felon in possession of a firearm was filed in the Western District of Texas. The parties have not disclosed to the Court what, if anything, transpired between December 22, 2012 and April 3, 2013.

### Defendant's motion to suppress

Defendant argues that his vehicle was searched without a warrant, done in bad faith, and that Det. Clancy has made inconsistent statements regarding the facts of this case.

### Standard

---

[5] The existence of a detection canine was not known by the Assistant U.S. Attorney until July 11, 2013. This fact was disclosed to defense counsel on July 12.

[6] A Glock model 22, .40 caliber handgun with a fully loaded 15 round magazine was found in the engine compartment.

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights." *United States v. Guerrero–Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). When the government performs a warrantless search or seizure, however, the burden shifts to the government to prove by a preponderance of the evidence that the search or seizure was constitutional. *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012).

## Analysis

### Initial Traffic Stop and Detention

Even if done under pretext, a police officer may stop a vehicle based on traffic violations they observe. "An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses." *United States v. Sanchez–Pena*, 336 F.3d 431, 437 (5th Cir. 2003) (*citing Whren v. United States*, 517 U.S. 806, 813 (1993)). "A traffic stop is justified at its inception if an officer has 'an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle.'" *United States v. Banuelos–Romero*, 597 F.3d 763, 766 (5th Cir. 2010). Defendant does not challenge the traffic stop in this case. Nor does the Defendant challenge his detention and/or arrest once the officer saw a bag of cocaine on the vehicle floor.

### Vehicle Search – consent

Consent serves as an exception to the Fourth Amendment's requirement that searches be supported by warrants. *Davis v. United States*, 328 U.S. 582, 593-94 (1946). The government must prove, by a preponderance of the evidence, that consent was freely and voluntarily given." *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997). Consent is not voluntary if it "was

4

the product of duress or coercion, express or implied." *Schneckloth v.. Bustamonte*, 412 U.S. 218, 227 (1973).

"Although ... no single factor is dispositive or controlling," *United States v. Mendez*, 431 F.3d 420, 429 (5th Cir. 2005), the Fifth Circuit has identified six issues to be considered by courts evaluating the voluntariness of an act of consent: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Olivier–Becerril*, 861 F.2d 424, 426 (5th Cir. 1988).

In this case the Court finds Officer Hernandez to be a credible witness. Although prudence would have dictated that he include the verbal consent in his report or he secure the consent in writing, at the time he thought he had an "easy" case where the Defendant was going to become a cooperating witness and he unwisely condensed his report. The Court rejects the implication that all the police officers are acting in bad faith. Whether Det. Clancy made mistakes in his testimony in the Gilbert Guzman matter about what drugs and quantities were found have little impact on Officer Hernandez's testimony. Likewise, the last minute disclosure of the canine unit being involved in this case has little impact on Officer Hernandez's testimony.[7] The Defendant complains in his supplemental brief that the dog handler did not testify in court during the suppression hearing and there is "doubt as to whether a dog sniff even took place." Because, as explained below, there are other grounds beside the dog sniff to deny the motion to

---

[7] The Court does note, however, that the "sloppiness" of the investigative file did provide defense counsel with legitimate concerns.

suppress, the alleged dog sniff will not be considered by the Court in its analysis as to whether probable cause allowed for the search of the vehicle.

The Court finds that the Government proved, by a preponderance of the evidence, that consent was freely and voluntarily given. There is no evidence that consent was the product of duress or coercion, express or implied. Although the Defendant was in custodial status, there were no coercive police procedures. The Defendant readily agreed to cooperate with the police. Although there was no evidence that the Defendant was aware of his right to refuse to consent, the Court takes judicial notice from the pretrial services bond report that the Defendant has an extensive criminal history.

**Vehicle Search – "automobile exception"**

"Under the automobile exception, 'police may conduct a warrantless search of an automobile and any containers therein if they have probable cause to believe it contains contraband or evidence of crime.'" *U.S. v. Wilson*, 510 Fed. Appx. 339, 344 (5th Cir. 2013). Given Officer Hernandez's observation of cocaine in the vehicle, he had probable cause to believe that the vehicle contained evidence of other drugs. *Id*. The Fifth Circuit has held that *Arizona v. Gant*, 556 U.S. 332 (2009) is limited to searches pursuant to an arrest, and the Supreme Court did not modify the standards regarding searches pursuant to the automobile exception. *U.S. v. Potts*, 459 Fed. Appx. 455, 456 (5th Cir. 2012).

What complicates this analysis, however, is the fact that the vehicle was removed from the grocery parking lot and taken to the gang unit office. A warrantless search is permissible under the automobile exception to the Fourth Amendment if "(1) the officer conducting the search had probable cause to believe that the vehicle in question contain[ed] property that the government may properly seize; and (2) exigent circumstances justified the search." *United*

*States v. Castelo*, 415 F.3d 407, 412 (5th Cir. 2005) (alterations in original) (*quoting United States v. Reyes*, 792 F.2d 536, 538(5th Cir. 1986)). Exigent circumstances exist, for example, when a vehicle is stopped on the highway. *Banuelos–Romero*, 597 F.3d at 767 (citations omitted).

The Fifth Circuit has concluded that under *California v. Carney*, 471 U.S. 386, 392 (1985), "probable cause alone suffices to justify a warrantless search of a vehicle lawfully parked in a public place, as long as the scope of the search is reasonable." *U.S. v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996). Accordingly, in this case, law enforcement officers would have been justified to search the vehicle at the meat market parking lot.

The United States Supreme Court has also held that "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261 (1982); *United States v. Ross*, 456 U.S. 798, 807 n. 9 (1982) ("[I]f an immediate search on the street is permissible without a warrant, a search soon thereafter at the police station is permissible if the vehicle is impounded."); *United States v. McSween*, 53 F.3d 684, 689 (5th Cir. 1995) ( "If probable cause justified a warrantless search on the roadside, it likewise justified one at the station after the car was impounded."); *United States v. Harrison*, 918 F.2d 469, 473 (5th Cir. 1990) ("The search need not be done immediately and if begun at the scene can be continued later at another location.").

In part, this is allowable because the existence of exigent circumstances is determined at the time the automobile is seized. *U.S. v. Kye Soo Lee*, 962 F.2d 430, 438 (5th Cir. 1992). *See also U.S. v. Malloy*, 217 Fed. Appx. 342, 345 (5th Cir. 2007) ("automobile exception can justify

a warrantless vehicle search even if the police exercise complete control over the vehicle and do not conduct the search immediately").

## Conclusion

For the reasons stated above, Defendant's motion to suppress is denied.

SIGNED this 2nd day of August, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE